CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DISALVO, ESQ.
Nevada Bar No. 16398
LINDSAY N. ROGINSKI, ESQ.
Nevada Bar No. 16616
**CHRISTIAN MORRIS TRIAL ATTORNEYS**
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
T: (702) 434-8282
F: (702) 434-1488
Christian@cmtalaw.com
Sarah@cmtalaw.com
Lindsay@cmtalaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| K.S., individually, | CASE NO.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| CAESARS ENTERTAINMENT, INC., MERUELO GROUP LIMITED LIABILITY COMPANY, J RESORT LIMITED LIABILITY COMPANY; DOES 1 through 10; ROE CORPORATIONS 13 through 20; and ABC LIMITED LIABILITY COMPANIES 21 through 30, | |
| Defendants. | |

COMES NOW, Plaintiff, K.S., individually; by and through her counsel of record, Christian M. Morris, Esq., Sarah E. DiSalvo, Esq., and Lindsay N. Roginski, Esq., of the law firm CHRISTIAN MORRIS TRIAL ATTORNEYS, for their causes of action against Defendants above named, and each of them, and complain and allege as follows:

///

///

*CHRISTIAN MORRIS TRIAL ATTORNEYS*
*2250 Corporate Circle, Suite 390*
*Henderson, Nevada 89074*
*P: 702-434-8282 | F: 702-434-1488*

1

**INTRODUCTION**

Caesars Entertainment, Inc., Meruelo Group Limited Liability Company, and J Resort Limited Liability Company (hereinafter "Defendant Hotels" and "Defendants") exploited victims of sex trafficking, deliberately ignoring blatant signs of abuse to maximize their profits. Defendant Hotels prioritized financial gains over the lives and dignity of countless victims, creating an environment where traffickers could operate with impunity. Defendant Hotels' willful negligence and active complicity demonstrate a shocking disregard for human life, as they knowingly facilitated the systematic abuse and exploitation of vulnerable individuals for years. Plaintiff K.S. is one of many vulnerable individuals who were coerced into sex trafficking, forced into commercial acts, and subjected to abuse, all while Defendant Hotels turned a blind eye to her suffering. Defendant Hotels and its staff consistently ignored clear indicators and reports of sex trafficking at its properties, allowing its hotels to become hubs for sex trafficking, profiting from repeated bookings and extended stays while countless lives were shattered within their walls.

**PARTIES**

1.    Plaintiff K.S. is and at all times relevant hereto was a resident of Washoe County, Nevada.

2.    Plaintiff K.S., (hereinafter "Plaintiff") is a victim of trafficking pursuant to 22 U.S.C. § 7102(12), 22. U.S.C. § 7102(16), 22 U.S.C. § 7102(17), 18 U.S.C. § 1591(a), and 18 U.S.C. § 1595.

3.    Due to the sensitive and intimate nature of the issues, Plaintiff K.S. requests that this Court grant a protective order pursuant to Fed. R. Civ. P. 26(c) to permit them to proceed under a pseudonym and to ensure that Defendants maintain the confidentiality of Plaintiff's identity during this lawsuit and thereafter.[1]

*///*

---

[1] In cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings under Fed. R. Civ. P. 16(b), and to issue protective orders limiting disclosure of the party's name under Fed. R. Civ. P. 26(c), to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434-8282 | F: 702-434.1488

4.    Generally, under the Federal Rules of Civil Procedure, pleadings must state the name of all parties.[2] However, there are exceptions when the issues involved are of a sensitive and highly personal nature.[3] For good cause, the Court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.[4]

5.    Here, granting pseudonym status and proceeding under seal is warranted because this litigation will involve the disclosure of stigmatizing sexual information, including rape. Plaintiff K.S. fears the stigma of her family, friends, employers, and communities if her true identity is revealed in the public record.

6.    Additionally, disclosing the identity of Plaintiff K.S. may put her safety at risk. Victims of trafficking often face serious harm, including threats, violence, and retaliation, when they take legal action against their traffickers or those associated with them. In some cases, this danger can escalate to severe injury or even loss of life.

7.    Plaintiff K.S. should not be compelled to disclose her identity in order to maintain her privacy and safety. Plaintiff's privacy interests substantially outweigh the customary practice of judicial openness.[5]

8.    Moreover, Defendants will not be prejudiced by Plaintiff proceeding under pseudonyms. Plaintiff K.S. is willing to disclose her identity to Defendants for the limited purpose of investigating their claims, provided that a protective order is in place. Accordingly, Plaintiff K.S. simply seeks redaction of their personal identifying information from the public docket and assurances that Defendants will not disclose or publish their identities due to the sensitive and intimate nature of this case. Plaintiff K.S. requests that this Court grant a protective order pursuant

---

[2] Fed. R. Civ. P. 10(a).
[3] A district court must balance the need for anonymity against the general presumption that the parties' identities are public information and the risk of unfairness to the opposing party. *See, e.g., M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir.1998); *James v. Jacobson*, 6 F.3d at 238 (4th Cir. 1993); *Doe v. Frank*, 951 F.2d 320, 323–24 (11th Cir.1992*); Doe v. Stegall*, 653 F.2d at 186 (5th Cir.); see *also Doe v. Frank* at 323 (11th Cir. 1992) (holding that a plaintiff should be permitted to proceed anonymously in cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity).
[4] Fed. R. Civ. P. 26(c).
[5] Does I thru XXIII, 214 F.3d at 1068 (joining its 4th, 5th, 10th, and 11th sister circuits in holding that a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity).

to Fed. R. Civ. P. 26(c) to allow her to proceed under pseudonyms and to ensure the confidentiality of her identity both during and after this litigation, safeguarding her safety, personal life, relationships, and future employment prospects.

9.     Defendant CAESARS ENTERTAINMENT, INC. (hereinafter "Defendant Caesars") is an American corporation incorporated under the laws of the State of Delaware, with its corporate headquarters and principal place of business located in Clark County, Nevada, and at all times relevant was doing business in Washoe County, Nevada.

10.     Defendant MERUELO GROUP, LLC (hereinafter "Defendant Meruelo"), is a foreign limited liability company acting under the laws of the State of California, with its corporate headquarters and principal place of business in Nevada, and at all times relevant was doing business in Washoe County, Nevada.

11.     Defendant J RESORT, LLC (hereinafter "Defendant J Resort"), is a foreign limited liability company acting under the laws of the State of Delaware, with its corporate headquarters and principal place of business in Nevada, and at all times relevant was doing business in Washoe County, Nevada.

12.     Upon information and belief, Defendants Caesars, Meruelo and J Resort (hereinafter "Defendant Hotels" and "Defendants") purchase, own, franchise, and/or manage a network of approximately sixty-two (62) hotels and resorts.

13.     Upon information and belief, Defendant Hotels maintain a pervasive brand presence at their properties, including the Reno Circus Circus, the Reno Sands Regency, and the Reno Grand Sierra Resort, now known as the Reno J Resort (hereinafter, "Defendant Properties") through prominent internal and external signage, staff uniforms, and branded in-room amenities such as pens and notepads. This comprehensive branding strategy ensures consistent guest experience aligned with Defendant Hotels' standards.

14.     Upon information and belief, Defendant Hotels directly oversaw its management, including:

a.   Managing business operations;

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

b.  Overseeing room rentals, including use of Defendant Hotels' database of room availability and occupancy;

c.  Training and jointly employing employees and staff in accordance with Defendant Hotels' requirements;

d.  Earning revenue from the operation of Defendant Properties;

e.  Assisting in the establishment of Defendant Hotels as a business venture;

f.  Communicating, working with, and complying with Defendant Hotels regarding the operation of Defendant Properties;

g.  Managing Defendant Hotels, who monitor the internet and social media presence, including reputation management, and the collection of customer data.

15.  Upon information and belief, Defendant Hotels exercised significant control over the Defendant Properties' operations, policies, procedures, and business practices, such as:

a.  Providing specifications for Defendant Hotels' physical structure;

b.  Assisted with the grand opening of Defendant Hotels in compliance with Defendant Hotels' contracts, policies, and standards;

c.  Communicating, monitoring, reviewing, and grading compliance with Defendant Hotels about the operations of the Defendant Properties;

d.  Requiring Defendant Hotels to participate in training sessions and meetings;

e.  Established and dictated policies, procedures, and training related to safety, security, and response protocols at Defendant Properties;

f.  Required the use of Defendant Hotels' reservations system at the Defendant Properties, which Defendant Hotels oversaw and controlled;

g.  Managed, Operated, Monitored, and Processed payment information for guests at the Defendant Properties through Defendant Hotels' corporate systems;

h.  Provided and required the use of branded clothes and other service goods to Defendant Hotels for the operation of the Defendant Properties;

i.  Managed, monitored, and operated the social media and online presence of the Defendant Properties;

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434-8282 | F: 702-434-1488

j.  Provided and required the use of the software, hardware, and platforms for data sharing with Defendant Properties;

k.  Provided and required the use of reservation platforms where payment methods and suspicious reservations could indicate trafficking at the Defendant Properties;

l.  Provided franchise and brand support to Defendant Properties through back-end management;

m.  Provided training and education to Defendant Properties' employees, agents, and/or staff through webinars, seminars, conferences, and online portals;

n.  Provided, controlled, and maintained customer review and response platforms and third-party vendor platforms of same;

o.  Required the use of online bookings on the Defendant Properties' domains;

p.  Required Defendant Properties to use Defendant Hotels' customer rewards program, property management software, and approved vendors for internet services, Wi-Fi access, and filtering;

q.  Provided IT support to Defendant Properties for all property management systems, owned, operated, and required by Defendant Hotels;

r.  Set employee wages of Defendant Properties' employees, agents, and/or staff;

s.  Created standardized employee training methods and mandated strict operating rules for Defendant Properties' employees, agents, and/or staff;

t.  Conducted regular inspections of the Defendant Properties' facilities and operations;

u.  Fixed profit margins; and

v.  Shared profits.

16. Upon information and belief, Plaintiff's claims against Defendant Hotels arise out of their actual and apparent agency relationship with their branded hotels, where Plaintiff was trafficked. Defendant Hotels are liable directly, vicariously, and indirectly through an agency relationship for the acts and/or omissions of the employees at their branded hotels, including the

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

Reno Circus Circus, Reno Sands Regency, and Reno Grand Sierra Resort, now known as the Reno J Resort.

17.     Furthermore, Defendant Hotels benefited from operations at Defendant Properties beyond royalty payments and licensing fees. Defendants gathered and utilized data from guests, traffickers, and "Purchasers" or "Johns" who accessed internet/Wi-Fi services, further enhancing Defendant Hotels' financial and marketing advantages.

18.     Upon information and belief, Defendant Hotels are vicariously liable for the acts and omissions of its agents, branded properties, and any sub-agents or employees operating at its branded properties, including Reno Circus Circus, Reno Sands Regency, and the Reno Grand Sierra Resort, now known as the Reno J Resort. Due to Defendant Hotels' extensive control over the operations, staffing, and management of its branded hotels, including the oversight of security, reporting mechanisms, and operational standards, Defendant Hotels are responsible for the actions taken at Defendant Properties.

19.     Plaintiff is informed, believes, and thereon alleges that all of the acts, omissions, and conduct described below of each, and every Defendant were duly authorized, ordered, and directed by the respective and collective Defendant corporate employers, officers, and management-level employees of said corporate employers. In addition thereto, said corporate employers participated in the aforementioned acts and conduct of their said employees, agents and representatives and each of them; and upon completion of the aforesaid acts and conduct of said corporate employees, agents and representatives, the Defendant corporations, respectively and collectively, ratified, accepted the benefits of, condoned, lauded, acquiesced, approved, and consented to each and every of the said acts and conduct of the aforesaid corporate employees, agents and representatives.

20.     The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants designated herein as DOES 1 through 10; ROE CORPORATIONS 11 through 20, and ABC LIMITED LIABILITY COMPANIES 21 through 30, ("DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants"), inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by such

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this Complaint accordingly and reserve the right to do so at the appropriate time.

21.    Plaintiff is informed, believes, and thereon alleges that DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants are responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to Plaintiff as hereinafter alleged.

22.    Plaintiff is informed, believes, and thereon alleges that DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants were involved in the initiation, approval, support, or execution of the wrongful acts upon which this litigation is premised, or of similar actions against Plaintiff of which Plaintiff is presently unaware or without adequate knowledge.

23.    Plaintiff is informed, believes, and thereon alleges that DOES/ROE/ABC Defendants are predecessors-in-interest, successors-in-interest, and/or agencies otherwise in a joint venture with, and/or serving as an alter ego of, any and/or all defendants named herein; and/or are entities employed by and/or otherwise directing the individual Defendants in the scope and course of their responsibilities at the time of the events and circumstances alleged herein; and/or are entities otherwise contributing in any way to the acts complained of and the damages alleged to have been suffered by Plaintiff herein. Upon information and belief, each of the defendants designated as DOES/ROE/ABC is in some manner vicariously and/or statutorily responsible for the events alleged by this Complaint and actually, proximately, and/or legally caused damages to Plaintiff.

24.    Defendants, and each of them, were the apparent and ostensible principals, apparent and ostensible agents, agents, apparent and ostensible servants, servants, apparent and ostensible employees, employees, apparent and ostensible assistants, assistants, apparent and ostensible consultants, and consultants of their Co-Defendants, and were acting as such within the course, scope, and authority of said agency and employment, and that each of the defendants, ///

as aforesaid, when acting as a principal, was in some manner responsible for the events alleged herein as an agent, servant, employee, assistant, and consultant.

25.     Every act or omission of the Defendants and their apparent and ostensible principals, principals, apparent and ostensible agents, agents, apparent and ostensible servants, servants, apparent and ostensible employees, apparent and ostensible assistants, assistants, apparent and ostensible consultants, and consultants of their Co-Defendants, whether or not within the scope of their agency, was ratified by the other remaining Defendants.

## JURISDICTION AND VENUE

26.     Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

27.     This Federal District Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, specifically the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595.

28.     This Federal District Court has personal jurisdiction over Defendants Caesars, Meruelo, and J Resort, pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Nevada's long-arm statute, NRS 14.065, because Defendants Caesars, Meruelo, and J Resort have purposefully availed themselves of the privilege of conducting business activities within Nevada. Further, Defendants have established minimum contacts with Nevada through their ownership, operation, and/or control of the hotel property where Plaintiff was trafficked, as well as their continuous and systematic business activities in Nevada as outlined above.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Plaintiff was trafficked at the Reno Circus Circus, the Reno Sands Regency, the Reno Grand Sierra Resort, now known as the Reno J Resort, all of which are located within this District.

30.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3), as this Federal District Court has personal jurisdiction over Defendants Caesars, Meruelo, and J Resort.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

## SEX TRAFFICKING UNDER FEDERAL LAW

31.     Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

32.     The requirement for liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA") § 1595, based on a beneficiary theory, can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value"; (2) "from participating in a venture"; which (3) the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

33.     Sex trafficking' is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

34.     "Commercial Sex Act" is defined as any sex act for which anything of value is given to or received by a person. 22 U.S.C. § 7102(4).

35.     "Severe Forms of Trafficking in Persons" is defined as any instance of sex trafficking where: (a) a commercial sex act is induced by force, fraud, or coercion; or (b) the person induced to perform such an act is under eighteen (18) years of age. 22 U.S.C. § 7102(11).

36.     Pursuant to 18 U.S.C. § 1591(a), all who knowingly provide or obtain commercial sex that was provided or obtained through force, fraud, and coercion, or "cause a person to engage in a commercial sex act" are guilty of sex trafficking. This includes, at a minimum, both the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work and the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

37.     18 U.S.C. § 1595 provides for a beneficiary liability claim against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of the TVPRA. *See* 18 U.S.C. § 1595(a).

## GENERAL ALLEGATIONS

38.     Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

39.    The Sex Trafficking industry generates approximately $236 Billion annually[6], making it the second-largest criminal trade after the sale of illegal drugs.[7]

40.    Traffickers use hotel and motel rooms as hubs for their operations,[8] where victims are harbored, raped, assaulted, and forced to service buyers. The hospitality industry has made millions by participating in ventures that it knew or should have known engaged in violations of the TVPRA, under 18 U.S.C. §1591(a).

41.    Due to the prevalent connection between hotels and sex trafficking, government agencies and nonprofits including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the United States Department of Transportation, various attorney generals, and the End Child Prostitution and Trafficking (hereinafter "ECPAT"), among others, have extensively educated the hotel industry, including Defendant Hotels, on identifying and responding to sex trafficking incidents and have established recommended policies and procedures for recognizing signs of sex trafficking.[9] [10]

---

[6] Rosalyn Roden, *Traffickers taking $236 billion in illegal profits at victims' expense*, Hope for Justice (citing International Labor Organization's 2024 report), (last visited April 15, 2025),
https://hopeforjustice.org/news/traffickers-taking-236-billion-in-illegal-profits-at-victims-expense/
[7] *Transnational organized crime: the globalized illegal economy*, United Nations Office on Drugs, (last visited April 15, 2025), https://www.unodc.org/toc/en/crimes/organized-crime.html
[8] Bradley Myles, *Combating Human Trafficking in the Hotel Industry*, HUFFINGTON POST (last visited April 15, 2025), https://www.huffpost.com/entry/combating-human-trafficking-in-the-hotel-industry_b_7840754
[9] Department of Homeland Security, *Blue Campaign Toolkit*, (last visited April 15, 2025)
https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing & Exploited Children, *Child Sex Trafficking Overview*, (last visited April 15, 2025), https://www.missingkids.org/content/dam/missingkids/pdfs/CST%20Identification%20Resource.pdf; Love 146, *Red Flags for Hotel and Motel Employees*, (last visited April 15, 2025), https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General, *Human Trafficking Red Flags*, (last visited April 15, 2025)
https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf .
[10] United States Department of Homeland Security Blue Campaign – *One Voice. One Mission. End Human Trafficking*, (last visited April 15, 2025), https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing and Exploited Children, *Trafficking Risk Factors*, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 15, 2025); Love 146, *Red Flags for Hotel & Motel Employees*, (last visited April 15, 2025), https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General, Human *Trafficking Red Flags*, (last visited April 15, 2025)
https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 15, 2025); U.S. Department of Transportation, *Indicators of Human Trafficking,* (last visited April 15, 2025), https://www.transportation.gov/stop-human-trafficking/indicators; Ohio Attorney *General, Human Trafficking Initiative*, (last visited April 15, 2025),  https://www.ohioattorneygeneral.gov/Individuals-and-Families/Victims/Human-Trafficking.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434-8282 | F: 702-434.1488

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

42.     Indicators of sex trafficking in a hotel environment follow a well-known pattern and are easily detectable by appropriately trained staff. Various organizations have developed human trafficking "tool kits," which help hotel staff in every position identify and respond to signs of sex trafficking.[11] From check-in to check-out, there are indicators that traffickers and their victims exhibit during their stay at the hotel.

43.     Despite this knowledge, the hotel industry continues to prioritize profits over victims' safety. While hospitality corporations swiftly adapted their business practices to respond to the COVID-19 pandemic, they have remained inactive in the face of the human trafficking crisis. This failure to take meaningful action has led to the repeated sexual abuse and rape of victims on their properties.

44.     Defendants, and each of them, systematically failed to create, adopt, implement, and enforce anti-trafficking policies. This failure persists despite the availability of resources and training programs specifically designed for the hospitality industry to combat human trafficking.

45.     Defendants, and each of them, neglected to provide staff with necessary training to identify and respond to trafficking, and failed to mandate brand-wide training, allowing trafficking to persist unchecked.

46.     Defendants, and each of them, have actively profited from renting rooms where victims are forced into commercial sex against their will.

47.     Plaintiff in this case is a survivor of sex trafficking, seeking justice through the judicial system, which Congress has empowered to provide remedies under the TVPRA. Under 18 U.S.C. § 1595 Defendants, and each of them, knowingly benefited from participation in a venture that it knew or should have known was engaging in violations of 18 U.S.C. § 1591(a).

48.     Plaintiff has suffered severe injuries as a result of their prolonged exploitation, including ongoing mental, emotional, and psychological trauma. Because these injuries cannot be separated or assigned to a single Defendant, federal common law provides for joint and several liability, making all violators of Section 1595 of the TVPRA liable for a victim's damages.

---

[11] E.g., Department of Homeland Security, *Blue Campaign Toolkit*, (last visited April 15, 2025), https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434-8282 | F: 702-434-1488

Plaintiff is entitled to all compensatory and non-compensatory damages incurred during their trafficking period.

49.    The hospitality industry cannot continue to feign ignorance while profiting from the exploitation of trafficking victims. Defendants, and each of them, must be held accountable for their known participation in ventures that violate the TVPRA, prioritizing financial gain over the safety and dignity of the individuals who have suffered under their watch.

## DEFENDANT CAESAR'S ACTUAL AND CONSTRUCTIVE KNOWLEDGE OF SEX TRAFFICKING AT THE RENO CIRCUS CIRCUS

50.    Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

51.    Defendants are aware that the hospitality industry serves as a primary facilitator of human trafficking, both domestically and internationally.[12] The United Nations,[13] international non-profit organizations,[14] and the U.S. Department of Homeland Security[15] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels.

52.    Since 2004, initiatives like ECPAT-USA launched the Tourism Child-Protection Code of Conduct (hereinafter the "Code") in the United States outlining specific hotel practices to prevent sex trafficking, such as: (1) prohibiting hourly room rates; (2) disallowing cash payments for accommodations; (3) monitoring online platforms for sex advertisements

---

[12] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION, (last visited April 15, 2025) https://ecommons.cornell.edu/items/62deb32c-ce31-4780-bb95-7827509a8890.

[13] UNITED NATIONS OFFICE ON DRUGS AND CRIME, *Global Report on Trafficking in Persons*, (last visited April 15, 2025), https://www.unodc.org/documents/data-and-analysis/tip/2021/GLOTiP_2020_15jan_web.pdf; *See also*, UNITED NATIONS OFFICE ON DRUGS AND CRIME, *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners*, (last visited April 15, 2025), https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html.

[14] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[15] U.S. Department of Homeland Security, *Human Trafficking and the Hospitality Industry*, (last visited April 15, 2025), https://www.dhs.gov/archive/blue-campaign/human-trafficking-and-hospitality-industry; U.S. Department of Homeland Security, *Blue Campaign Toolkit*, (last visited April 15, 2025), https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

mentioning the hotel's name or featuring images of its rooms; (4) implementing regular changes to internet and Wi-Fi passwords in guest rooms and public areas; (5) tracking patterns of frequent visitors to specific rooms; (6) maintaining vigilance for rooms with excessive quantities of prophylactics, lubricants, and towels; and (7) mandating the registration of all visitors, including detailed information such as guest name, visitor name, arrival and departure times, and room number.

53.    Defendant Caesars are signatories of The Code, an anti-trafficking initiative developed by ECPAT, committing to policies aimed at combating human trafficking. Despite this commitment, Defendant Caesars failed to implement anti-trafficking measures at its branded properties, continuing to profit from trafficking and exploitation occurring at its locations.

54.    As a signatory to ECPAT, Defendant Caesars publicly committed to follow the organization's anti-trafficking guidance and participate in programs to prevent sex trafficking at its hotels. Consequently, Defendant Caesars was obligated to establish and enforce effective standards, mandates, and operational measures to combat trafficking within its properties.

55.    In 2019, Defendant Caesars deepened its partnership with ECPAT-USA by joining a premier consortium of hospitality leaders in the International Tourism Partnership, which provides a platform for companies to share best practices to end human trafficking.[16] Despite publicly promoting this effort and claiming to prioritize anti-trafficking measures, Caesars Entertainment failed to enforce the policies necessary to prevent trafficking and exploitation at its properties, including at the Reno Circus Circus location where Plaintiff was trafficked.

56.    Nationwide initiatives, such as the United Nations' Blue Heart Campaign (1997)[17] and the Department of Homeland Security's Blue Campaign (2010)[18], have acknowledged the prevalence of human trafficking within the hotel industry and the absence of adequate internal

---

[16] Caesars Entertainment, *Caesars Entertainment Announces New Global Commitments to Eradicate Exploitation of Vulnerable Individuals,* (last visited July 17, 2025), https://investor.caesars.com/news-releases/news-release-details/caesars-entertainment-announces-new-global-commitments-eradicate.

[17] United Nations, *The Blue Heart Campaign,* (last visited July 15, 2025), https://www.unodc.org/blueheart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20heinous%20crime.

[18] Department of Homeland Security, *DHS Blue Campaign Five Year Milestone,* (last visited July 15, 2025), *https://www.dhs.gov/archive/news/2015/07/22/dhs-blue-campaign-five-year-milestone.*

policies to address the issue. In response, these campaigns have aimed to educate both the public and private sectors—including hotel businesses—by providing free resources to help the hospitality industry combat human trafficking.

57.     Widely recognized indicators of sex trafficking, which Defendants, and each of them, were made aware of, knew, or should have known, include but are not limited to:

 a. Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

 b. Individuals show signs of physical abuse, restraint, and/or confinement;

 c. Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

 d. Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

 e. Individuals lack freedom of movement or are constantly monitored;

 f. Individuals avoid eye contact and interaction with others;

 g. Individuals have no control or possession of money or ID;

 h. Individuals dress inappropriately for their age, for the weather, or have lower quality clothing compared to others in their party;

 i. Individuals have few or no personal items – such as no luggage or other bags;

 j. Individuals appear to be with significantly older "boyfriend" or in the company of older males;

 k. A group of girls appear to be traveling with an older female or male;

 l. A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

 m. Drug abuse or frequent use of "party drugs" including (but not limited to) GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Crack Cocaine, Cocaine, and Marijuana;

 n. Possession of bulk sexual paraphernalia such as attire, condoms, birth control, or lubricant;

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

o.   Possession or use of multiple cell phones; and

p.   Possession or usage of large amounts of cash or pre-paid cards.

58.   Upon information and belief, Defendant Caesars has access to individual hotel location do-not-rent (hereinafter "DNR") lists that often list reasons for the refusal to rent, including suspicion of human trafficking. Defendant Caesars failed to share this information across their branded properties or take proactive steps to prevent trafficking.

59.   Guest reviews on sites like TripAdvisor, Yelp, Google, and Expedia frequently cite issues such as prostitution, physical violence, and criminal activity at the Reno Circus Circus.

60.   Defendant Caesars monitored online reviews of the Reno Circus Circus, which, upon information and belief, provide substantial evidence of human trafficking, violence, and other illicit activities occurring on the premises, such as:

a.   A 2009 review details the presence of individuals engaging in solicitation activities in neighboring rooms and on the same guest floor.

b.   A 2005 review expresses concerns about the suitability of Circus Circus Reno for families, citing the prevalence of adult entertainment venues and provocatively dressed casino staff. The reviewer also observed individuals believed to be engaged in prostitution within the casino and advised others against bringing children.

c.   A 2017 review recounts that a party began in the adjacent room around 9:00 pm. Despite multiple calls to the front desk requesting security assistance, the reviewer alleges there was no response, and the disruptive event lasted until approximately 8:00 am.

d.   A 2017 review alleges that an unauthorized individual gained access to the guest's room late at night through the connecting doors between adjoining rooms.

e.   A 2016 review states that the guest was disturbed by excessive noise and explicit sounds coming from a neighboring room, which prevented them from sleeping.

///
///

16

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

f.  A 2016 review claims that the hotel room's ceilings were stained with what appeared to be blood, and that handprints and breast prints were visible on the window.

g.  A 2024 review reports discovering human feces, a bottle of sexual lubricant, and bodily fluids on the hotel bed, raising concerns about the possible prior use of the room for explicit activities.

h.  A 2025 review describes seeing multiple individuals whom the guest believed to be involved in drug use or solicitation, as well as others loitering on the property. The reviewer reports feeling unsafe throughout their stay.

i.  A 2025 review notes that numerous unhoused individuals entered the casino to sleep, causing the guest to feel unsafe and uncomfortable during their stay.

j.  A 2025 review describes an incident where the guest's vehicle was vandalized in the parking garage. The reviewer reports damage, including a punctured gas tank and a dent on the truck's left side.

61.    Upon information and belief, these reviews, spanning over a decade, provide clear evidence of human trafficking at the Reno Circus Circus; this evidence was required to be reported to the Caesars Entertainment Defendants and, upon information and belief it was reported and Defendant Caesars failed to address these issues and failed to intervene, highlighting a disregard for guest safety and a tolerance of sex trafficking. These examples demonstrate that Defendant Caesars knew or should have known of the problem and failed to take proactive measures to not profit from it.

62.    Evidence from other locations shows that Defendant Caesars has consistently received reports of widespread human trafficking at its branded properties, knew that the prevalence of sex trafficking was an issue across its branded properties, and failed to do anything to prevent continuing to profit from it.

///

///

///

17

63.    Publicly available information, including news reports, reveals the long-standing and consistent role of Defendant Caesars in providing a venue for sex trafficking over the years. Among the notable press coverage detailing the frequent use of Caesars Entertainment properties for illegal activities, the following incidents were highlighted:

a.    In 2025, a federal lawsuit was filed against several parties, including Circus Circus Casinos, Inc., and Caesars Entertainment. The complaint contends that Circus Circus in Reno was the main site where the plaintiff was repeatedly trafficked. According to the allegations, the plaintiff interacted with approximately 150 individuals at the property, averaging two to three clients per night, and visited the hotel on at least 30 separate occasions.[19]

b.    In 2025, the family of a man fatally shot at Caesars Palace initiated a wrongful death suit against the casino. The lawsuit asserts that prior to the incident, the Las Vegas Metropolitan Police Department informed Caesars of a notable increase in illegal sex work in Las Vegas and recommended enhanced security and policy measures. The complaint alleges Caesars did not adopt any additional precautions in response to these warnings.[20]

c.    In 2022, a Las Vegas firefighter was charged with felony pandering at Planet Hollywood, a Caesars Entertainment property. Prosecutors allege he attempted to solicit an undercover female officer to engage in commercial sex, stating that he had associates who would pay well for her services.[21]

64.    Upon information and belief, Defendant Caesars was aware of the criminal activity and sex trafficking occurring at Caesars Entertainment properties across the Country.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

---

[19] Justia, *Alice J., pseudonymously v. Dhillon et al,* (last visited July 17, 2025), https://dockets.justia.com/docket/nevada/nvdce/3:2025cv00246/174804.
[20] Yahoo, *Family of man shot, killed in Las Vegas Strip hotel room files wrongful death lawsuit against Caesars Entertainment,* (last visited July 17, 2025), https://www.yahoo.com/news/family-man-shot-killed-las-015218242.html.
[21] Casino, *Las Vegas Firefighter Arrested in Planet Hollywood Sex-Trafficking Sting,* (last visited July 17, 2025), https://www.casino.org/news/las-vegas-firefighter-arrested-in-sex-trafficking-sting/.

65.     Upon information and belief, Defendant Caesars' upper-level executives monitored news stories and law enforcement reports on criminal activities and sex trafficking occurring at Caesars Entertainment properties across the country.

66.     Upon information and belief, Defendant Caesars' public relations department issued memorandums and communications regarding efforts to prevent such criminal activities and sex trafficking occurring at Caesars Entertainment properties across the country.

67.     Based on the accumulation of public information, news reports, and online reviews, by the time Plaintiff was trafficked at the Reno Circus Circus, Defendant Caesars, and each of them knew, or should have known, that:

   a.   Sex trafficking was widespread and ongoing at Caesars Entertainment branded properties, including the Reno Circus Circus;

   b.   Sex trafficking was a brand-wide problem for Defendant Caesars, originating from management-level decisions at their corporate offices;

   c.   Defendant Caesars failed to take reasonable steps to identify or address sex trafficking, which was actively occurring at the Reno Circus Circus;

   d.   Defendants Caesars' efforts, if any, to stop trafficking were ineffective at the Reno Circus Circus;

   e.   Defendant Caesars was earning revenue by providing venues where widespread and ongoing sex trafficking was occurring at the Reno Circus Circus;

   f.   Defendant Caesars was earning revenue by turning a blind eye to the human trafficking occurring at the Reno Circus Circus.

68.     Upon information and belief, Defendant Caesars understood the greater risks of prostitution and sex trafficking occurring in the Reno area, due to its notoriety as a hub for prostitution, and being located next to counties that legalize prostitution.

69.     Upon information and belief, despite clear evidence that sex trafficking was occurring at Reno Circus Circus, Defendant Caesars, and each of them, continued to earn revenue by continuing conduct that they knew or should have known would facilitate trafficking.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

70.    Upon information and belief, Defendant Caesars exercised comprehensive control over security and the reporting of criminal activities, including human trafficking, across its properties. Upon information and belief, Defendant Caesars implemented a policy mandating staff at its branded locations, such as Reno Circus Circus, to report suspected criminal activities to corporate oversight. Defendant Caesars implemented these safety and security measures by placing and monitoring security cameras, accepting and reviewing customer complaints, and inspecting properties, such as the Reno Circus Circus. Defendant Caesars also collected data regarding hotel operations and customers, including names, payment information, reservation history, browsing data, and other details associated with their stay. Given Defendant Caesars retained control over security and criminal activity reporting, it had the responsibility and ability to monitor and address signs of illegal activities on its premises. Despite having the responsibility and the means to monitor and address these reports through various security measures, such as camera surveillance and customer data analysis, Defendant Caesars failed to act on clear indicators of trafficking. This neglect facilitated the sex trafficking of individuals, including Plaintiff.

71.    Upon information and belief, Defendant Caesars maintained control over the safety and security measures at its branded properties by implementing systems that directed customer complaints and reports of issues to Defendant Caesars rather than the individual hotel locations, including Reno Circus Circus. Despite establishing these reporting mechanisms, Defendant Caesars failed to take reasonable action in response to complaints of criminal activity and sex trafficking at its branded properties, including at the Reno Circus Circus.

72.    Upon information and belief, Defendant Caesars retained control over property-specific and customer data from Reno Circus Circus by dictating the methods for recording, storing, and reporting this data. Through this control, Defendant Caesars had actual or constructive knowledge of the ongoing trafficking occurring at Reno Circus Circus during the time Plaintiff was trafficked there. Despite having access to detailed customer data, including guest names, payment information, and reservation history, Defendant Caesars continued to

///

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

facilitate trafficking at the Reno Circus Circus by providing a venue and related services that enabled to profit from sexual exploitation with minimal risk of detection or interference.

73.    Upon information and belief, Defendant Caesars knew or should have known that Reno Circus Circus was in violation of 18 U.S.C. § 1591(a) by:

a.    Upon information and belief, Defendant Caesars knew or, through the exercise of reasonable diligence, should have known that it was engaging in violations of 18 U.S.C. § 1591(a). Defendant Caesars should have been aware of the trafficking activity at the Reno Circus Circus, as it retained control over all aspects of the hotel's operations and, therefore, had a corresponding duty to act to prevent its profiting from the trafficking venture in which it was participating. Despite this, Defendant Caesars continued to knowingly benefit from its relationship with Reno Circus Circus, including the proceeds Defendant Caesars obtained from the unlawful sex trafficking of Plaintiff. Even after becoming aware of these violations, Defendant Caesars continued providing Reno Circus Circus with operational support, use of its trademarks, and other resources to operate Reno Circus Circus in a way that Defendants knew or should have known was engaging in violations of 18 U.S.C § 1591(a).

b.    Upon information and belief, Defendant Caesars knew, or should have known through the exercise of reasonable diligence, that it was engaging in violations of 18 U.S.C. § 1591(a). Defendant Caesars retained control over all relevant aspects of the operations at Reno Circus Circus and thus had a duty to monitor and address any illegal activity. Despite this responsibility, Defendant Caesars continued to benefit from its relationship with the Reno Circus Circus, including financial proceeds derived from unlawful sex trafficking. Even after becoming aware of these violations, Defendant Caesars continued to provide operational support, use of its trademarks, and other resources to Reno Circus Circus, allowing it to operate in a manner that violated 18 U.S.C. § 1591(a).

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

c.    Upon information and belief, there were times when Defendant Caesars obtained proof that they had profited from its properties that violated the TVPRA, yet they did not disgorge themselves of the benefits they received.

**DEFENDANT MERUELO'S ACTUAL AND CONSTRUCTIVE KNOWLEDGE OF SEX TRAFFICKING AT THE RENO GRAND SIERRA RESORT**

74.    Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

75.    Guest reviews on sites like TripAdvisor, Yelp, Google, and Expedia frequently cite issues such as prostitution, physical violence, and criminal activity at the Reno Grand Sierra Resort, owned by Defendant Meruelo.

76.    Defendants, and each of them, monitored online reviews of the Reno Grand Sierra Resort, which, upon information and belief, provide substantial evidence of human trafficking, violence, and other illicit activities occurring on the premises, such as:

a.    A July 2025 review from a casino advisor reports observing individuals struggling with substance abuse and homelessness staying at the Grand Sierra Resort, with apparent drug activity taking place on the premises. The reviewer recommends that the hotel station security personnel at each elevator to address these concerns.

b.    A 2023 review recounts an incident in which a guest contacted security due to persistent loud partying and yelling from another room throughout the night. Despite assurances that security would investigate, no intervention occurred and the disruption continued unabated.

c.    A 2015 review alleges that when a guest notified Grand Sierra Resort security about suspected prostitution activity near his room, the security staff dismissed the concern and took no action.

d.    A 2017 review details a guest's experience visiting the Grand Sierra Resort on a Friday evening, observing what appeared to be significant prostitution activity. The reviewer advises that, despite the property's family-friendly

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434-8282 | F: 702-434-1488

marketing, the casino environment felt unsafe due to the visible presence of individuals believed to be engaged in prostitution and pimping.

e. A 2024 review describes widespread prostitution activity occurring within the Grand Sierra Resort.

f. A 2018 review claims that prostitution is commonplace at the Grand Sierra Resort, describing an incident where the guest's family was kept awake all night by noise from a neighboring room, allegedly involving prostitution. Despite contacting the front desk, security was not dispatched and the disturbances continued.

77.     Upon information and belief, these reviews, spanning nearly a decade, provide clear evidence of human trafficking at the Reno Grand Sierra Resort; this evidence was required to be reported to Defendant Meruelo and, upon information and belief it was reported and Defendant Meruelo failed to address these issues and failed to intervene highlighting a disregard for guest safety and a tolerance of sex trafficking. These examples demonstrate that Defendant Meruelo knew or should have known of the problem and failed to take proactive measures to not profit from it.

78.     Upon information and belief, evidence from Meruelo properties shows that Defendant Meruelo has consistently received reports of widespread human trafficking at its branded properties, knew that the prevalence of sex trafficking was an issue across its branded properties, and failed to do anything to prevent continuing to profit from it.

79.     Upon information and belief, publicly available sources—including anticipated news reports—suggest that Defendant Meruelo has played a long-standing and consistent role in providing a venue for sex trafficking over the years. We believe that media coverage exists highlighting frequent use of Meruelo properties for illegal activities; among these, the following incidents are understood by Plaintiff's counsel to have received notable press attention.

80.     Defendants were aware of the criminal activity and sex trafficking occurring at Meruelo Group properties across the state of Nevada.

///

81.    Upon information and belief, Defendant Meruelo's upper-level executives monitored news stories and law enforcement reports on criminal activities and sex trafficking occurring at Defendant Meruelo properties across the state of Nevada.

82.    Upon information and belief, Defendant Meruelo's public relations department issued memorandums and communications regarding efforts to prevent such criminal activities and sex trafficking occurring at Meruelo properties across the state of Nevada.

83.    Based on the accumulation of public information, news reports, and online reviews, by the time Plaintiff was trafficked at the Reno Grand Sierra Resort, Defendant Meruelo knew, or should have known, that:

    a.   Sex trafficking was widespread and ongoing at Meruelo-branded properties, including the Reno Grand Sierra Resort;

    b.   Sex trafficking was a brand-wide problem for Defendant Meruelo, originating from management-level decisions at its corporate offices;

    c.   Defendant Meruelo failed to take reasonable steps to identify or address sex trafficking, which was actively occurring at the Reno Grand Sierra Resort;

    d.   Defendant Meruelo's efforts, if any, to stop trafficking were ineffective at the Reno Grand Sierra Resort;

    e.   Defendant Meruelo was earning revenue by providing venues where widespread and ongoing sex trafficking was occurring at the Reno Grand Sierra Resort;

    f.   Defendant Meruelo was earning revenue by turning a blind eye to the human trafficking occurring at the Reno Grand Sierra Resort.

84.    Upon information and belief, Defendant Meruelo understood the greater risks of prostitution and sex trafficking occurring in the Reno area, due to its notoriety as a hub for prostitution, and being located next to counties that legalized prostitution.

85.    Upon information and belief, despite clear evidence that sex trafficking was occurring at Reno Grand Sierra Resort, Defendant Meruelo, and each of them, continued to earn revenue by continuing conduct that they knew or should have known would facilitate trafficking.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

86.    Upon information and belief, Defendant Meruelo exercised comprehensive control over security and the reporting of criminal activities, including human trafficking, across its properties. Upon information and belief, Defendant Meruelo implemented a policy mandating staff at its branded locations, such as Reno Grand Sierra Resort, to report suspected criminal activities to corporate oversight. Defendant Meruelo implemented these safety and security measures by placing and monitoring security cameras, accepting and reviewing customer complaints, and inspecting properties, such as the Reno Grand Sierra Resort. Defendant Meruelo also collected data regarding hotel operations and customers, including names, payment information, reservation history, browsing data, and other details associated with their stay. Given Defendant Meruelo's retained control over security and criminal activity reporting, it had the responsibility and ability to monitor and address signs of illegal activities on its premises. Despite having the responsibility and the means to monitor and address these reports through various security measures, such as camera surveillance and customer data analysis, Defendant Meruelo failed to act on clear indicators of trafficking. This neglect facilitated the sex trafficking of individuals, including Plaintiff K.S.

87.    Upon information and belief, Defendant Meruelo maintained control over the safety and security measures at its branded properties by implementing systems that directed customer complaints and reports of issues to Defendant Meruelo rather than the individual hotel locations, including the Reno Grand Sierra Resort. Despite establishing these reporting mechanisms, Defendant Meruelo failed to take reasonable action in response to complaints of criminal activity and sex trafficking at its branded properties, including the Reno Grand Sierra Resort.

88.    Upon information and belief, Defendant Meruelo retained control over property-specific and customer data from the Reno Grand Sierra Resort by dictating the methods for recording, storing, and reporting this data. Through this control, Defendant Meruelo had actual or constructive knowledge of the ongoing trafficking occurring at Reno Grand Sierra Resort during the time Plaintiff was trafficked there. Despite having access to detailed customer data, including guest names, payment information, and reservation history, Defendant Meruelo

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

continued to facilitate trafficking at the Reno Grand Sierra Resort by providing a venue and related services that enabled traffickers to profit from sexual exploitation with minimal risk of detection or interference.

89.     Upon information and belief, Defendant Meruelo knew or should have known that the Reno Grand Sierra Resort was in violation of 18 U.S.C. § 1591(a) by:

a.   Upon information and belief, Defendant Meruelo knew or, through the exercise of reasonable diligence, should have known that it was engaging in violations of 18 U.S.C. § 1591(a). Defendant Meruelo should have been aware of the trafficking activity at the Reno Grand Sierra Resort, as it retained control over all aspects of the hotel's operations and, therefore, had a corresponding duty to act to prevent its profiting from the trafficking venture in which it was participating. Despite this, Defendant Meruelo continued to knowingly benefit from their relationship with the Reno Grand Sierra Resort, including the proceeds Meruelo obtained from the unlawful sex trafficking of Plaintiff. Even after becoming aware of these violations, Defendant Meruelo continued providing the Reno Grand Sierra Resort with operational support, use of its trademarks, and other resources to operate Reno Grand Sierra Resort in a way that Defendants knew or should have known was engaging in violations of 18 U.S.C § 1591(a).

b.   Upon information and belief, Defendant Meruelo knew, or should have known through the exercise of reasonable diligence, that it was engaging in violations of 18 U.S.C. § 1591(a). Defendant Meruelo retained control over all relevant aspects of the operations at the Reno Grand Sierra Resort and thus had a duty to monitor and address any illegal activity. Despite this responsibility, Defendant Meruelo continued to benefit from its relationship with the Reno Grand Sierra Resort, including financial proceeds derived from unlawful sex trafficking. Even after becoming aware of these violations, Defendant Meruelo continued to provide operational support, use of its trademarks, and other resources to Reno Grand Sierra Resort, allowing it to operate in a manner that violated 18 U.S.C. § 1591(a).

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

c. Upon information and belief, there were times when Defendant Meruelo obtained proof that they had profited from its properties that violated the TVPRA, yet they did not disgorge themselves of the benefits they received.

**DEFENDANT J RESORT'S ACTUAL AND CONSTRUCTIVE KNOWLEDGE OF**
**SEX TRAFFICKING AT THE J RESORT, FORMALLY KNOWN AS**
**THE SANDS REGENCY**

90. Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

91. Guest reviews on sites like TripAdvisor, Yelp, Google, and Expedia frequently cite issues such as prostitution, physical violence, and criminal activity at the J Resort, formally known as the Reno Sands Regency, owned by Defendant J Resort.

92. Defendants, and each of them, monitored online reviews of the Reno Sands Regency, which, upon information and belief, provide substantial evidence of human trafficking, violence, and other illicit activities occurring on the premises, such as:

a. A 2024 review characterizes J Resort as having a questionable and unsafe atmosphere, with the guest advising others to avoid the property.

b. A 2025 review describes J Resort as the least desirable casino the guest has visited, noting the presence of intoxicated individuals congregating both at the entrance and in the parking lot.

c. A 2018 review reports observing numerous individuals apparently struggling with substance abuse and exhibiting concerning behavior around the Sands Regency casino, leading to safety concerns.

d. A 2011 review states that one positive aspect of the Sands Regency casino is its accessibility to individuals seeking companionship or narcotics on the property.

e. A 2010 review echoes similar observations regarding the apparent availability of illicit activities at Sands Regency, with the reviewer describing feeling unsafe while walking through the casino.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

93.    Upon information and belief, these reviews—spanning nearly a decade—constitute substantial evidence of human trafficking activity at the Reno Sands Regency. Such evidence triggered a duty to report these concerns to Defendant J Resort. Upon information and belief, these matters were, in fact, reported; however, Defendant J Resort failed to take meaningful action to address or intervene, thereby demonstrating a disregard for guest safety and a tolerance of sex trafficking. These examples establish that Defendant J Resort, and each related entity, knew or should have known of the ongoing problem yet failed to implement reasonable measures to prevent, address, or avoid profiting from such illicit activity.

94.    Upon information and belief, evidence from J Resort properties shows that Defendant J Resort has consistently received reports of widespread human trafficking at its branded properties, knew that the prevalence of sex trafficking was an issue across its branded properties, and failed to do anything to prevent continuing to profit from it.

95.    Upon information and belief, publicly available sources—including anticipated news reports—suggest that Defendant J Resort has played a long-standing and consistent role in providing a venue for sex trafficking over the years. We believe that media coverage exists highlighting the frequent use of J Resort properties for illegal activities; among these, the following incidents are understood by Plaintiff's counsel to have received significant press attention.

96.    Defendant J Resorts was aware of the criminal activity and sex trafficking occurring at the J Resort.

97.    Upon information and belief, Defendant J Resorts upper-level executives monitored news stories and law enforcement reports on criminal activities and sex trafficking occurring at Defendant J Resort properties.

98.    Upon information and belief, Defendant J Resort's public relations department issued memorandums and communications regarding efforts to prevent such criminal activities and sex trafficking occurring at J Resort properties across the state of Nevada.

///

///

99.    Based on the accumulation of public information, news reports, and online reviews, by the time Plaintiff was trafficked at the Reno Sands Regency, Defendant J Resort, and each of them knew, or should have known, that:

 a. Sex trafficking was widespread and ongoing at J Resort-branded properties, including the Reno Sands Regency;

 b. Sex trafficking was a brand-wide problem for Defendant J Resort, originating from management-level decisions at its corporate offices;

 c. Defendant J Resort failed to take reasonable steps to identify or address sex trafficking, which was actively occurring at the Reno Sands Regency;

 d. Defendant J Resort's efforts, if any, to stop trafficking were ineffective at the Reno Sands Regency;

 e. Defendant J Resort was earning revenue by providing venues where widespread and ongoing sex trafficking was occurring at the Reno Sands Regency;

 f. Defendant J Resort was earning revenue by turning a blind eye to the human trafficking occurring at the Reno Sands Regency.

100.    Upon information and belief, Defendant J Resort understood the greater risks of prostitution and sex trafficking occurring in the Reno area, due to its notoriety as a hub for prostitution, and being located next to counties that legalized prostitution.

101.    Upon information and belief, despite clear evidence that sex trafficking was occurring at Reno Sands Regency, Defendant J Resort, and each of them, continued to earn revenue by continuing conduct that they knew or should have known would facilitate trafficking.

102.    Upon information and belief, the Defendant J Resort exercised comprehensive control over security and the reporting of criminal activities, including human trafficking, across its properties. Upon information and belief, Defendant J Resort implemented a policy mandating staff at its branded locations, such as Reno Sands Regency, to report suspected criminal activities to corporate oversight. Defendant J Resort implemented these safety and security measures by placing and monitoring security cameras, accepting and reviewing customer complaints, and inspecting properties, such as the Reno Sands Regency. Defendant J Resort also collected data

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434-8282 | F: 702-434-1488

regarding hotel operations and customers, including names, payment information, reservation history, browsing data, and other details associated with their stay. Given Defendant J Resort's retained control over security and criminal activity reporting, it had the responsibility and ability to monitor and address signs of illegal activities on its premises. Despite having the responsibility and the means to monitor and address these reports through various security measures, such as camera surveillance and customer data analysis, Defendant J Resort failed to act on clear indicators of trafficking. This neglect facilitated the sex trafficking of individuals, including Plaintiff K.S.

103.    Upon information and belief, Defendant J Resort maintained control over the safety and security measures at its branded properties by implementing systems that directed customer complaints and reports of issues to Defendant J Resort rather than the individual hotel locations, including the Reno Sands Regency. Despite establishing these reporting mechanisms, Defendant J Resort failed to take reasonable action in response to complaints of criminal activity and sex trafficking at its branded properties, including the Reno Sands Regency.

104.    Upon information and belief, Defendant J Resort retained control over property-specific and customer data from the Reno Sands Regency by dictating the methods for recording, storing, and reporting this data. Through this control, Defendant J Resort had actual or constructive knowledge of the ongoing trafficking occurring at Reno Sands Regency during the time Plaintiff was trafficked there. Despite having access to detailed customer data, including guest names, payment information, and reservation history, Defendant J Resort continued to facilitate trafficking at the Reno Sands Regency by providing a venue and related services that enabled traffickers to profit from sexual exploitation with minimal risk of detection or interference.

105.    Upon information and belief, Defendant J Resort knew or should have known that the Reno Sands Regency was in violation of 18 U.S.C. § 1591(a) by:

    a.    Upon information and belief, Defendant J Resort knew or, through the exercise of reasonable diligence, should have known that it was engaging in violations of 18 U.S.C. § 1591(a). Defendant J Resort should have been aware of the trafficking

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

30

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

activity at the Reno Sands Regency, as it retained control over all aspects of the hotel's operations and, therefore, had a corresponding duty to act to prevent its profiting from the trafficking venture in which it was participating. Despite this, Defendant J Resort continued to knowingly benefit from their relationship with the Reno Sands Regency, including the proceeds Defendant J Resort obtained from the unlawful sex trafficking of Plaintiff. Even after becoming aware of these violations, Defendant J Resort continued providing the Reno Sands Regency with operational support, use of its trademarks, and other resources to operate Reno Sands Regency in a way that Defendants knew or should have known was engaging in violations of 18 U.S.C § 1591(a).

b.  Upon information and belief, Defendant J Resort knew, or should have known through the exercise of reasonable diligence, that it was engaging in violations of 18 U.S.C. § 1591(a). Defendant J Resort retained control over all relevant aspects of the operations at the Reno Sands Regency and thus had a duty to monitor and address any illegal activity. Despite this responsibility, Defendant J Resort continued to benefit from its relationship with the Reno Sands Regency, including financial proceeds derived from unlawful sex trafficking. Even after becoming aware of these violations, Defendant J Resort continued to provide operational support, use of its trademarks, and other resources to Reno Sands Regency, allowing it to operate in a manner that violated 18 U.S.C. § 1591(a).

c.  Upon information and belief, there were times when Defendant J Resort obtained proof that they had profited from its properties that violated the TVPRA, yet they did not disgorge themselves of the benefits they received.

## THE SEX TRAFFICKING OF PLAINTIFF K.S.

106.   Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

107.   By means of a combination of force, coercion, physical abuse, threats, manipulation, compelled use of and dependency on illegal substances, control over identification

31

documents and possessions, and deprivation of basic survival necessities such as, but not limited to, food, water, transportation, shelter, and clothing, Plaintiff K.S.'s traffickers forced her to have commercial sex for money.

108.    Plaintiff K.S.'s trafficking began when she first met her Trafficker in Reno, Nevada. What seemed like a friendly relationship quickly evolved into one of abuse and control. Plaintiff K.S.'s Trafficker coerced her into trafficking in 2014 at the age of twenty-one (21), which continued until the age of twenty-five (25).

109.    During Plaintiff K.S.'s trafficking in Reno, Plaintiff K.S. was coerced to perform various sexual services at the Reno Circus Circus, the Reno Sands Regency, and the Reno Grand Sierra Resort, now known as the Reno J Resort.

110.    Plaintiff K.S.'s traffickers and purchasers rented rooms at Defendant Hotels because the locations offered convenience, anonymity, and proximity to potential purchasers.

111.    Plaintiff K.S.'s traffickers found purchasers by advertising on her Traffickers escort service, an internet site listing escorts and adult service providers, while connected to Defendant Hotels' internet.

112.    During her stay at Defendant Hotels, Plaintiff K.S. was held against her will, forced to have sex with multiple purchasers every day, and was raped on numerous occasions.

113.    During her stay at Defendant Hotels, Plaintiff K.S. was repeatedly physically abused.

114.    During her stay at Defendant Hotels, Plaintiff K.S. was subjected to psychological torment, as her Traffickers withheld food and water, forced her to take illegal substances, abused her, and threatened her with death or severe harm for being disobedient.

115.    Plaintiff K.S.'s Trafficker openly threatened to kill her and her family if she tried to escape or disobey their orders, instilling constant fear and keeping her under complete control.

116.    During her stay at Defendant Hotels, Plaintiff K.S. engaged with numerous staff members of the Defendants, exhibiting multiple signs indicative of being under the control of her Traffickers. These interactions presented clear indicators of human trafficking that were recognizable, yet the staff did nothing.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

117.    During her stay at Defendant Hotels, Plaintiff K.S. was frequently crying and screaming in pain while being assaulted and abused in her room. Despite the loud noises and clear distress, no one from the staff intervened or called the police, and any reports to Defendant Properties and Defendant Hotels went unanswered.

118.    During Plaintiff's stay at Defendant Caesar's Reno Circus Circus property, Plaintiff K.S.'s Trafficker and Purchaser filmed a sex tape of her without her consent, depicting her being assaulted and abused in Defendant's hotel room.

119.    During Plaintiff K.S.'s stay at Defendant J Resort's Sands Regency property, she was approached on the Sands Regency casino floor by an individual employed as a security guard for the property. The security guard solicited Plaintiff K.S. for sexual services and ultimately engaged her as a prostitution client. This conduct evidences not only the security guard's awareness of commercial sexual exploitation taking place on the premises, but also his direct participation in such unlawful activity.

120.    Plaintiff K.S. was transported to the Grand Sierra Resort by an individual employed at Defendant Meruelo's property, who maintained contact with Plaintiff's trafficker. This Grand Sierra Resort employee invited Plaintiff K.S. to the casino's staff Christmas party and subsequently brought her to a hotel room at the property to engage in commercial sexual activity. The employee's ability to facilitate K.S.'s attendance at a staff event, secure a hotel room, and his direct involvement with her demonstrate that Grand Sierra Resort personnel knowingly interacted with individuals engaged in commercial sex and sex trafficking.

121.    During her stay at the Defendant Properties, Plaintiff K.S.'s Trafficker implemented a methodical and well-established operational protocol, consistent with practices widely recognized within the illicit sex trafficking industry, such as:

    a.    An unusually high volume of individuals entered and exited Plaintiff K.S.'s room at frequent intervals;

    b.    Plaintiff K.S.'s Traffickers consistently refused housekeeping services, denying hotel staff entry to the room;

///

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

c. Plaintiff K.S.'s room exhibited an excessive quantity of used illicit drugs, prophylactics, soiled linens, and discarded clothing, indicative of commercial sexual activity.

d. Plaintiff K.S. was regularly transported to and from the premises by her Trafficker, who would book and prepare the hotel room in advance of her arrival. Upon completion of each meeting with a client, K.S. would contact the Trafficker to be taken home.

e. Audible disturbances, including loud vocalizations and screams, emanated from Plaintiff K.S.'s room, suggestive of ongoing abuse and sexual assault.

f. Plaintiff K.S.'s Trafficker maintained logistical and financial control over the commercial sex acts taking place, including receiving a portion of the proceeds after picking her up at the end of each encounter.

g. Plaintiff K.S.'s Traffickers consistently utilized cash payments for room reservations at Defendant Hotels, a common practice in sex trafficking operations;

h. Plaintiff K.S.'s Traffickers routinely requested accommodations in secluded areas of the hotel, away from other guests;

i. Plaintiff K.S.'s Traffickers made frequent and excessive requests for fresh linens and towels;

j. Plaintiff K.S. endured physical abuse in public areas of Defendant Hotels;

k. An unusually large quantity of used prophylactics was consistently observed in Plaintiff K.S.'s Defendant Hotel rooms;

l. Plaintiff K.S.'s Traffickers repeatedly instructed hotel staff not to disturb the room occupants;

m. Plaintiff K.S. was often observed wearing attire inappropriate for the prevailing weather conditions;

n. Instances of loitering and solicitation were observed at Defendant Hotels;

///
///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434-8282 | F: 702-434-1488

122.    Consequently, Defendants knew or should have known of Plaintiff K.S.'s trafficking at Defendant Hotels, given the pervasive nature of sex trafficking indicators of K.S. and those that Defendants knew within the hospitality industry.

123.    Despite the presence of numerous trafficking indicators that should have been recognizable to trained hospitality staff, employees, and/or agents of Defendant Hotels placed Plaintiff K.S. in rooms isolated from other guests, further facilitating her exploitation.

124.    These indicators of human trafficking were conspicuous and readily apparent to any reasonably attentive employee at Defendant Hotels. The prevalence and visibility of these warning signs, which align with widely recognized indicators within the hospitality industry, should have alerted properly trained staff to the ongoing exploitation at Defendant Hotels.

125.    The failure to recognize and respond to these clear indicators of trafficking demonstrates a severe lapse in Defendant Hotels' duty of reasonable care and adherence to the industry-standard practices for identifying human trafficking and halting their continued profit from the trafficking venture.

**DEFENDANTS KNOWINGLY ENABLED AND PROFITED FROM THE SEX TRAFFICKING OF PLAINTIFF**

126.    Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

127.     Defendant Hotels played a direct and significant role in facilitating the trafficking of Plaintiff K.S. at the Defendant Properties.

128.    Defendant Hotels knowingly benefited from the sex trafficking of Plaintiff.

129.    Defendant Hotels rented rooms to and provided internet to Plaintiff's Traffickers when they knew, or should have known, that human trafficking was prevalent within its branded properties, including the Reno Circus Circus, the Reno Grand Sierra Resort, and the Reno Sands Regency, now known as the Reno J Resort.

130.    Defendants benefited from the steady income generated by Plaintiff's Traffickers and their purchasers. Defendant Hotels profited from every room rented by Traffickers and purchasers where Plaintiff was harbored for sex trafficking.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

131.     When Defendant Hotels were made aware of their profits from sex trafficking, they did nothing to disgorge themselves of the profits.

132.     Defendant Hotels profited from the data it collected when Traffickers and purchasers used the Defendant Properties' internet to advertise and solicit Plaintiff for commercial sex.

133.     Defendant Hotels' employees, agents, and/or staff, particularly front desk employees, knew or should have known of the obvious signs of Plaintiff's trafficking at the Defendant Properties.

134.     Given Defendant Hotels' access to various sources of information, such as police reports, news articles, complaints, prior convictions, and negative reviews regarding its properties, Defendants knew or should have known of the trafficking occurring at the Defendant Properties, where Plaintiff was trafficked.

135.     Defendants knew or should have known of Plaintiff's trafficking occurring at the Defendant Properties, considering the city's reputation for sex trafficking. [22] [23] [24]

136.     Defendant Hotels knew or should have known of Plaintiff's trafficking occurring at the Defendant Properties, due to the various clear signs of trafficking.

137.     Defendant Hotels had multiple opportunities to stop the Traffickers who victimized Plaintiff K.S.; instead, Defendant Hotels failed to take reasonable measures to stop profiting from the sex trafficking at the Defendant Properties. Defendant Hotel's systematic willful blindness to the situation enabled and encouraged sex trafficking, and they financially benefited from the ongoing exploitation of Plaintiff.

138.     Defendants continued to enjoy financial gain from their reputation for privacy, discretion, and their facilitation of commercial sex, knowing that these activities directly contributed to the trafficking of Plaintiff.

---

[22] Brianna Beveridge, *Sex Trafficking in Reno, Nevada*, UNR Liberal Arts 365 Blog, (Dec. 6, 2022), https://liberalarts365.liberalarts.unr.edu/2022/12/06/sex-trafficking-in-reno-nevada/.
[23] Shared Hope Int'l, *Report: Nevada's Legal Prostitution Harms Trafficking Victims* (July 17, 2019), https://sharedhope.org/2019/07/report-nevadas-legal-prostitution-harms-trafficking-victims/.
[24] Ty O'Neil, *Human Trafficking Sting Leads to 17 Arrests in Reno*, This is Reno, (Feb. 10, 2022), https://thisisreno.com/2022/02/human-trafficking-sting-leads-to-17-arrests-in-reno/.

139.   Defendant Hotels failed to take any meaningful steps to alert law enforcement, intervene in situations involving Plaintiff's trafficking of which they knew or should have known, and failed to implement reasonable security measures to identify and to prevent their profiting from the human trafficking at the Defendant Properties, including the sex trafficking of Plaintiff.

140.   Defendant Hotels maintained these deficiencies intentionally to maximize profits, including by:

a.   Reducing the cost of training employees, managers, and staff on how to identify human trafficking and sexual exploitation, and what steps should be taken when trafficking is suspected;

b.   Failing to refuse room rentals or report guests to law enforcement, even when such guests were identified as likely sex traffickers or purchasers of sex, in order to maximize room occupancy and corresponding profits;

c.   Cutting security costs by not employing qualified security personnel or maintaining proper video surveillance systems to monitor and combat human trafficking;

d.   Failing to enforce proper policies and procedures to prevent and report human trafficking, including not holding accountable hotel staff or managers who were complicit in facilitating trafficking activities.

141.   Despite having access to extensive information regarding sex trafficking indicators and the conspicuous signs of Plaintiff's exploitation at the Defendant Properties, Defendant Hotels failed to implement appropriate measures to intervene and prevent its profiting from the trafficking of Plaintiff. This inaction persisted despite widespread industry awareness of trafficking risks, publicly available guidelines for prevention, and the presence of numerous red flags that aligned with recognized indicators of human trafficking within the hospitality sector.

///

///

///

///

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

142.    Defendant Hotels consistently failed to take necessary actions to prevent its profiting from the exploitation occurring at the Defendant Properties. Specifically, Defendant Hotels failed to:

    a.    Mandate comprehensive training for employees and managers on identifying signs of human trafficking and sexual exploitation;

    b.    Analyze data on criminal activity and customer reviews indicating trafficking at its properties, and take corrective actions to address these issues;

    c.    Collect and utilize vast amounts of data from its locations for marketing purposes but fail to apply the same data to combat trafficking in its hotels;

    d.    Refuse room rentals or report suspicious guests to law enforcement, prioritizing maximum occupancy rates over the safety of trafficking victims;

    e.    Monitor and track guest wireless network activity for signs of illicit commercial sex or human trafficking-related digital activity;

    f.    Implement adequate security measures, such as qualified security personnel and appropriate cybersecurity, to combat trafficking and sexual exploitation;

    g.    Use its influence as a parent company to hold franchisees accountable for the trafficking occurring on its properties.

143.    Defendant Hotels' deliberate failure to intervene and its ongoing facilitation of sex trafficking at the Defendant Properties directly enabled the continued victimization of Plaintiff and its continued profits from that victimization.

144.    Defendant Hotels knew or should have known of the persistent sex trafficking occurring within its establishments. Instead of implementing prompt and effective measures to combat this crisis, Defendant Hotels deliberately turned a blind eye to the blatant signs of exploitation. This willful ignorance allows them to continue profiting from room rentals clearly used for illicit purposes. By failing to address this issue, Defendant Hotels prioritizes its financial gains over the safety and well-being of trafficking victims, effectively enabling the continuation of these criminal activities on its premises.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

145.    As a result, Plaintiff has suffered severe emotional distress, humiliation, mental anguish, and physical pain and suffering, as well as a substantial loss of enjoyment of life. Furthermore, Plaintiff has incurred and will continue to incur medical expenses, attorney's fees, lost wages, diminished earning capacity, and punitive damages, all in an amount to be determined at trial.

### FIRST CLAIM FOR RELIEF

### (Violations of 18 U.S.C 1595 ("TVPRA"))

### Against all Defendants

146.    Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

147.    Plaintiff K.S. is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and is entitled to bring a civil action under 18 U.S.C. § 1595.

148.    Defendant Hotels are liable under 18 U.S.C. § 1595(a) because in the ways described above, Defendant Hotels knowingly or recklessly participated in harboring, maintenance, and/or other acts in furtherance of sex trafficking, including the sex trafficking of Plaintiff K.S.. Defendant Hotels, and each of them, knowingly benefited by receiving financial and other compensation, through its participation in a venture that they knew or were reckless in not knowing involved the trafficking, harboring, and maintenance of sex trafficking victims in exchange for financial benefits.

149.    Defendant Hotels' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595. Specifically, Defendant Hotels, and each of them, had a statutory obligation not to benefit financially or receive anything of value from a venture that it knew, or should have known, engaged in violating the TVPRA. At all relevant times, Defendant Hotels, and each of them, failed to behave as reasonably diligent corporations and breached this duty through its participation in the harboring, maintaining, soliciting, and advertising Plaintiff and her traffickers for the purpose of commercial sex induced by force, fraud, or coercion.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

150. Defendant Hotels knew or should have known of the persistent sex trafficking occurring within its establishments. Instead of implementing prompt and effective measures to combat this crisis, Defendant Hotels deliberately turned a blind eye to the blatant signs of exploitation. This willful ignorance allows Defendant Hotels to continue profiting from room rentals used for illicit purposes. By failing to address this issue, the hotels prioritize its financial gains over the safety and well-being of trafficking victims, effectively enabling the continuation of these criminal activities on its premises.

151. Defendant Hotels, and each of them, benefited as a result of these acts, omissions, and/or commissions by renting rooms and providing internet/Wi-Fi to traffickers and customers, keeping operating costs low, maintaining the loyal customer base that fuels the supply and demand of sex trafficking, and limiting mandatory regulations. Moreover, on each occasion they received payment for rooms, Defendant Hotels directly benefited from the sex trafficking of Plaintiff when it knew or should have known violations of § 1591(a) were occurring. Defendant Hotels have never disgorged themselves of the profit, even though they admit they have profited from sex trafficking at the Defendant Properties.

152. Defendant Hotels, and each of them, have participated in a hotel business venture and/or a sex trafficking venture in which they knowingly benefited from the commercial sex trafficking of Plaintiff K.S., who was trafficked as a direct result of Defendant Hotels' acts, omissions, and/or commissions. In order to maintain the loyalty of the segment of their customer base involved in the sex trade, Defendant Hotels continued renting rooms to traffickers, failing to intervene despite obvious signs of trafficking. Defendant Hotels' failure to properly train and supervise its agents and employees, coupled with its disregard for the welfare of its guests, enabled the continued exploitation of Plaintiff K.S. Defendant Hotels and Plaintiff's Traffickers engaged in a venture in which all were necessary parties to obtain the profits from the sex trafficking of Plaintiff.

153. Moreover, Defendant Hotels, and each of them, knowingly and directly benefited from the sex trafficking of Plaintiff, on each occasion they received payment for rooms where Plaintiff was sexually exploited by guests of the hotel.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

154.    Plaintiff K.S. further alleges that, as a result of the relationship between Defendant Hotels and its branded properties, Defendant Hotels are vicariously liable for the acts of their branded properties, including all of Defendant Properties.

155.    Defendant Hotels' conduct, as set forth above and with respect to this cause of action, was done with a conscious disregard for Plaintiff's rights and safety, fully aware of the devastating and probable consequences of their conduct. This conduct included the willful and deliberate failure to act to prevent those consequences, justifying the award of punitive damages. Specifically, despite Defendant Hotels' knowledge of widespread sex trafficking occurring at the Defendant Properties, Defendant Hotels made the deliberate decision to continue profiting from the exploitation of vulnerable individuals. Defendant Hotels' failure to implement or enforce any meaningful policies to prevent trafficking and the profits from trafficking, failure to train or supervise employees, and complete indifference to the obvious signs of exploitation on its premises demonstrates a deliberate, reckless, and malicious disregard for Plaintiff's well-being. Defendant Hotels knew of the harm being caused, failed to take corrective action, and instead chose to perpetuate the suffering of Plaintiff for its financial gain. This egregious and malicious conduct justifies the imposition of punitive damages, as Defendant Hotels' actions were not only intentional but meant to foster a system of exploitation.

156.    Defendant Hotels' conduct as set forth above, and with respect to this cause of action, exhibited implied malice towards Plaintiff's rights and safety. This conduct was despicable and demonstrated a conscious disregard for Plaintiff's rights and safety, warranting an award of punitive damages. Specifically, Defendant Hotels, and each of them, were fully aware, or should have been fully aware, that sex trafficking was rampant at the Defendant Properties, and yet they chose to do nothing to prevent it. They ignored clear signs of trafficking, failed to intervene in the face of overwhelming evidence, and continued to allow the exploitation of vulnerable individuals to take place under their roof—all while reaping the financial rewards. This behavior, done with malice and a total lack of concern for the human suffering occurring on its premises, warrants the imposition of punitive damages to punish Defendant Hotels for its despicable conduct and deter others from engaging in similar conduct in the future.

157.    The conduct, actions, and omissions by Defendant Hotels, and each of them, were negligent, grossly negligent, intentional, willful, wanton, oppressive, malicious, and done with conscious disregard for the rights and safety of Plaintiff.

158.    The totality of Defendant Hotels' actions and omissions demands punitive damages of a magnitude sufficient to punish this egregious conduct and deter similar behavior across the hospitality industry. The scale of these damages should reflect the prolonged nature of Defendant Hotels' misconduct, spanning years of inaction and willful ignorance, the severity of harm inflicted on multiple victims due to Defendant Hotels' failure to act, the substantial profits Defendant Hotels repeated from the complicity in human trafficking, and the need to send a clear message to the entire hospitality industry that such conduct will not be tolerated and will result in severe financial consequences.

159.    The necessity for exemplary punitive damages is further amplified by the unique position of Reno, Nevada, within the hospitality landscape of the state. While not the hospitality capital of the world, Reno operates within a region known for legalized prostitution in neighboring counties and carries a persistent reputation, accurate or not, for permissive attitudes toward commercial sex. This perception, combined with Reno's active hospitality sector and the documented presence of illicit sex trafficking within local hotels and motels, creates an environment where corporate negligence can directly contribute to human exploitation. Therefore, punitive damages must be of a magnitude that not only punishes Defendants but also serves as a watershed moment for the regional hospitality industry, compelling immediate and comprehensive reforms in Reno that set a new precedent for corporate accountability in the fight against sex trafficking in hotels.

160.    After escaping their traffickers, Plaintiff K.S. has spent significant time and effort trying to rebuild her life, which was violently torn away. The lasting trauma from her captivity and abuse continues to affect her, serving as a constant reminder of Defendant Hotels' role in enabling her exploitation.

161.    As a direct and proximate result of the acts or omissions of Defendant Hotels, and each of them, Plaintiff K.S. has suffered severe emotional distress, humiliation, mental anguish,

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

psychological trauma, and physical pain and suffering, and a significant decrease in her ability to enjoy life, all in excess of Fifteen Thousand Dollars ($15,000.00).

162.    As a direct and proximate result of the acts or omissions of Defendant Hotels, and each of them, Plaintiff K.S. has incurred medical expenses for the treatment of her injuries and may require ongoing future treatments necessitated by the harm she suffered. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that she has suffered and/or will suffer damages in excess of Fifteen Thousand Dollars ($15,000.00).

163.    As a direct and proximate result of the acts or omissions of Defendant Hotels, and each of them, Plaintiff K.S. has suffered loss of income and/or loss of earning capacity, all in excess of Fifteen Thousand Dollars ($15,000.00).

164.    The actions and inactions of Defendant Hotels, their officers, agents, servants, and employees, directly and foreseeably caused Plaintiff K.S. to suffer these damages. Plaintiff K.S. is therefore entitled to compensation for all such damages, including but not limited to past and future medical expenses, therapy costs, lost enjoyment of life, and pain and suffering, in an amount to be proven at trial.

165.    As a direct and proximate result of the acts or omissions of Defendant Hotels, and each of them, Plaintiff K.S. has had to retain the services of the law offices of CHRISTIAN MORRIS TRIAL ATTORNEYS to pursue this action and is entitled to recover costs of suit and reasonable attorney's fees incurred herein.

**WHEREFORE**, PLAINTIFF K.S., and prays for judgment against Defendants as follows:

1. For general and special damages in excess of $75,000.00 for medical expenses, pain and suffering, permanent injury, disfigurement, anguish and fear, and lost wages.

2. For punitive damages;

3. For any and all pre- and post-judgment interest as permitted by law;

4. For reasonable attorney's fees and costs;

5. For such other and further relief as the Court Deems proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to F.R.C.P. 38, Plaintiff hereby demands trials by jury on all issues raised in this action.

DATED this 7<u>th</u> day of August 2025.

CHRISTIAN MORRIS TRIAL ATTORNEYS

/s/ *Sarah DiSalvo*

_____

CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DiSALVO, ESQ.
Nevada Bar No. 16398
LINDSAY N. ROGINSKI, ESQ.
Nevada Bar No. 16616
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
*Attorneys for Plaintiffs*